Caldwell, J.
The question involved in this case, depends entirely upon the proper construction of the 16th and 17th sections of the amended city charter, passed Eeb. 27,1846.
The 16th section provides, “ that all owners or occupants, in *164 front of whose premises the city council shall direct cross and side walks to be made or repaired; or any street, lane, alley, or highway, to be graded and regraded, leveled, paved, repaired, planked, replanked, flagged, graveled, or McAdamized, shall make such improvements at their own cost; but if not done in the manner, and of the materials, and within the time, prescribed by the city council, the said council may cause the improvements above specified to be made at the expense of the city, and assess the costs and expenses thereof upon such lots and grounds against which said improvements shall have been made respectively.”
Sec. 17 provides, “that the city council shall have power to lay out and prolong and open streets, lanes, alleys, roads, public squares, landing places, and slips in said city,” etc. Whenever any street or lane, etc., is laid out, altered or widened, by virtue of this section, the city council shall give notice of their intention to take, and appropriate, the land necessary for the same; the city council shall appoint three respectable freeholders of said city to ascertain and assess the damages and recompense due the owner or owners of said land, and at the same time what persons will be benefited by such improvements, and to assess the expense thereof on such real estate in said city, situated within 60 rods of such improvements, of the persons benefited, in proportion, as nearly as may be, to the benefit resulting to each lot or parcel of land. The said section further provides, that the assessors “ shall determine and award to the owner or owners of any land, such damages as • they shall judge such owner or owners to sustain, after making due allowance for any benefit which said owner or owners may derive from such improvement; the said assessors shall at the same time assess and apportion the' expense on the real estate in said city, situated within sixty rods of such improvement, benefited thereby, as nearly as may be, in proportion to the benefits resulting therefrom to each owner.”
The subsequent part of the section refers to the proceedings *165 of council in confirming such assessment, and the 19th section provides for the collection of the same as any other tax.
It is under the 17th section of the charter, that the city council claim to have acted in this instance. That section, it will be seen, provides for the opening of a street, and the appointment of assessors to determine the damage to the owners through which it passes; and also to determine what property will be benefited within 60 rods, and to assess the expense thereof on such property. Now it will be seen that all that this section provides for that would require an outlay of money, is the opening the street and paying for the right of way. By the term opening, we do not understand the improvement of a street or highway by grading, culverting, etc.; the term is generally (we think always) clearly distinguishable from such kind of improvement. The term opening, refers to the throwing open to the public what before was appropriated to individual use, and the removing of such obstructions as exist on the surface of the earth, rather than any artificial improvement of the surface. And we think in the charter this distinction is very clearly drawn.
The 16th section provides for the grading, levéling, paving, planking, and McAdamizing the streets,, and provides that the holders of property fronting on the. street, shall make the improvement at their own expense. If they fail to do the work by the time prescribed by the city council, the city shall do the work and assess the cost on such property.
The object, as we think, of this 16th section, is to provide for every kind of improvement to the streets, and the manner in which the tax should be assessed to defray the expense; and the 17th section providing for opening the streets, and paying the right of way.
Eor what particular improvement of the street this tax was assessed, we are unable to determine from the evidence. Reports and estimates are referred to, but their contents are not given, nor are any of them exhibited. The complainant, it is true, states in his bill that the improvement consisted in grading, *166 embanking, and excavating the street. This the city answers by saying that it can neither admit or deny the statement, but requires proof of the complainant, which he has failed to give. These facts are, however, admitted to be true, that a tax of over three thousand dollars was assessed for improving the street, and that the property holders through which the street passed made no claim for damages on account of the property taken.
The assessment provided for in the 17th section on all the lots within 60 rods benefited by an improvement, we suppose relates merely to raising a fund to pay for what the right of way might cost. Some of its terms taken alone might bear a more liberal construction, but when we consider the main object of the section, and take it in connection with the other provisions of the charter, we cannot give it a more extended signification. It follows then, as a consequence, that when there was no claim for the right of way, there was nothing requiring the action of assessors, and the contingency contemplated by the charter, in which they should act, not having arisen, the assessment and all the proceedings under it are void.
The mode provided by the charter was for the city to require the owners of property bounding on the street to make the improvement, and if they failed to do it by the time prescribed, the city could make it and charge the cost on said property. The right to tax is a prerogative of sovereignty, that does not inherently belong to any municipal corporation. All the power that such corporation has is given by its charter, and it is strictly limited in the exercise of such power to the manner provided by the charter.

Perpetual injunction decreed.